UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

*Jane B. Modell Rosen*

Write the full name of each plaintiff.

18 CV 6670

_____CV_____

(Include case number if one has been assigned)

-against-

*N.Y.C. Department of Education;*
*Melitina Hernandez, Principal, P.S. 123M;*
*Jennifer Johnson, Asst Principal, P.S. 123M;*
*Sean Dunning, Assistant Principal, P.S. 123M;*
*Brittany Velazquez, Asst Principal, P.S. 123M;*
*Joshua L. Furnell, Asst Principal, P.S. 123 M.*

Write the full name of each defendant. The names listed above must be identical to those contained in Section I.

Do you want a jury trial?

☐ Yes    ☐ No

## EMPLOYMENT DISCRIMINATION COMPLAINT

### NOTICE

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

Rev. 3/24/17

## I.    PARTIES    *SEE ATTACHED SHEET FOR DEFENDANTS 4-6*

### A.  Plaintiff Information

Provide the following information for each plaintiff named in the complaint. Attach additional pages if needed.

JANE                 B.    MODELL    ROSEN
First Name                 Middle Initial        Last Name

240 CENTRAL PARK    SOUTH    APT. 6H
Street Address

NEW YORK                  NEW YORK            10019
County, City                State            Zip Code

917 969 9965              jbmodellrosen@gmail.com
Telephone Number          Email Address (if available)

### B.  Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. (Proper defendants under employment discrimination statutes are usually employers, labor organizations, or employment agencies.) Attach additional pages if needed.

Defendant 1:    Melitina Hernandez, Principal
                Name
        P.S. 123  301 WEST 140th STREET
        Address where defendant may be served
                N.Y.            N.Y.            10030
                County, City          State          Zip Code

Defendant 2:    Jennifer Johnson, Assistant Principal
                Name
        P.S. 123  301 West 140th STREET
        Address where defendant may be served
                N.Y.            N.Y.            10030
                County, City          State          Zip Code

# EMPLOYMENT DISCRIMINATION COMPLAINT

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

### JANE B. MODELL ROSEN, COMPLAINANT

Defendants cont'd.:

4. Sean Dunning, Assistant Principal
        P.S. 514, New Design Middle School
        625 West 133rd Street
        New York, New York 10027

5. Joshua L. Furnell
        406 North Newbridge Road
        Levittown, N.Y. 11756

6. Brittany Velazquez, Assistant Principal
        P.S. 123 M
        301 West 140th Street
        New York, New York, 10030

Defendant 3:     *New York City Department of Education*

Name

*52 Chambers Street*

Address where defendant may be served

*N. Y.*                    *N. Y.*                    *10007*

County, City                    State                    Zip Code

## II.     PLACE OF EMPLOYMENT

The address at which I was employed or sought employment by the defendant(s) is:

*P.S. 123*

Name

*301 WEST 140th STREET*

Address

*N. Y.*                    *N. Y.*                    *10030*

County, City                    State                    Zip Code

## III.     CAUSE OF ACTION

## A.  Federal Claims

This employment discrimination lawsuit is brought under (check only the options below that apply in your case):

☐ **Title VII of the Civil Rights Act of 1964**, 42 U.S.C. §§ 2000e to 2000e-17, for employment discrimination on the basis of race, color, religion, sex, or national origin

   The defendant discriminated against me because of my (check only those that apply and explain):

   ☐   race: _____

   ☐   color: _____

   ☐   religion: _____

   ☐   sex: _____

   ☐   national origin: _____

☐ **42 U.S.C. § 1981**, for intentional employment discrimination on the basis of race

My race is: _____

☑ **Age Discrimination in Employment Act of 1967**, 29 U.S.C. §§ 621 to 634, for employment discrimination on the basis of age (40 or older)

I was born in the year: _____

☐ **Rehabilitation Act of 1973**, 29 U.S.C. §§ 701 to 796, for employment discrimination on the basis of a disability by an employer that constitutes a program or activity receiving federal financial assistance

My disability or perceived disability is: _____

☑ **Americans with Disabilities Act of 1990**, 42 U.S.C. §§ 12101 to 12213, for employment discrimination on the basis of a disability

My disability or perceived disability is: _____

☐ **Family and Medical Leave Act of 1993**, 29 U.S.C. §§ 2601 to 2654, for employment discrimination on the basis of leave for qualified medical or family reasons

## B.  Other Claims

In addition to my federal claims listed above, I assert claims under:

☑ **New York State Human Rights Law**, N.Y. Exec. Law §§ 290 to 297, for employment discrimination on the basis of age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status

☑ **New York City Human Rights Law**, N.Y. City Admin. Code §§ 8-101 to 131, for employment discrimination on the basis of actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, sexual orientation, alienage, citizenship status

☐ Other (may include other relevant federal, state, city, or county law):

_____

## IV.    STATEMENT OF CLAIM

### A.  Adverse Employment Action

The defendant or defendants in this case took the following adverse employment actions against me (check only those that apply):

- ☐ did not hire me
- ☐ terminated my employment
- ☐ did not promote me
- ☑ did not accommodate my disability
- ☐ provided me with terms and conditions of employment different from those of similar employees
- ☑ retaliated against me
- ☑ harassed me or created a hostile work environment
- ☑ other (specify):    _Constructive Dismissal_

### B.  Facts

State here the facts that support your claim. Attach additional pages if needed. You should explain what actions defendants took (or failed to take) *because of* your protected characteristic, such as your race, disability, age, or religion. Include times and locations, if possible. State whether defendants are continuing to commit these acts against you.

_Please refer to the attached ADDENDUM (29 pages) to United States District Court, Southern District of New York Discrimination Complaint._

As additional support for your claim, you may attach any charge of discrimination that you filed with the U.S. Equal Employment Opportunity Commission, the New York State Division of Human Rights, the New York City Commission on Human Rights, or any other government agency.

## V.    ADMINISTRATIVE PROCEDURES

For most claims under the federal employment discrimination statutes, before filing a lawsuit, you must first file a charge with the U.S. Equal Employment Opportunity Commission (EEOC) and receive a Notice of Right to Sue.

Did you file a charge of discrimination against the defendant(s) with the EEOC or any other government agency?

☑ Yes (Please attach a copy of the charge to this complaint.)

When did you file your charge?  *9/14/2017*

☐ No

Have you received a Notice of Right to Sue from the EEOC?

☑ Yes (Please attach a copy of the Notice of Right to Sue.)

What is the date on the Notice?  *4/25/2017*

When did you receive the Notice?  *a few days later*

☐ No

## VI.    RELIEF

The relief I want the court to order is (check only those that apply):

☐ direct the defendant to hire me

☐ direct the defendant to re-employ me

☐ direct the defendant to promote me

☐ direct the defendant to reasonably accommodate my religion

☐ direct the defendant to reasonably accommodate my disability

☑ direct the defendant to (specify) (if you believe you are entitled to money damages, explain that here)

*Pay money damages. I was constructively dismissed on May 8, 2017. I lost summer pay. I lost the opportunity to reach maximum salary as I was in the process of attaining the extra credit necessary to reach maximum salary. Additionally, I lost the opportunity to work on the new contractual salary increase in 2018 which would have greatly increased my pension. As a result, I believe that I am entitled to money damages as explained in the attached ADDENDUM. (29 pages)*

## ADDENDUM

## EMPLOYMENT DISCRIMINATION COMPLAINT

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

### JANE B. MODELL ROSEN, COMPLAINANT

1. I have been a teacher with the New York City Department of Education (formerly the NYC Board of Education) for approximately 39 years.

2. I am 71 years old.

3. I began my career with the New York City Board of Education in 1970, having taught under multiple New York City and New York State teaching licenses, to include Common Branches and art.

4. I have held a New York State Special Education teaching license since 1981 and have continued to work under that license, after having been appointed in 1981.

5. Prior to joining the staff at New York City Department of Education Renewal School P.S. 123M (*Renewal* referring to the designated status for poorly performing New York City schools with the threat of closure and which are required to follow specific parameters of function for improvement), I was the out-of-classroom IEP Teacher at P.S.50M for several years, having continually worked for the Department of Education as a special education teacher, special education unit coordinator, and member of a Committee of Special Education team since 1981.

6. In August 2015, I had reached out, via email to several schools listed in the Open Market, expressing my specific interest in an IEP Teacher position since my previous school was on the brink of closing, as it has since. Principal Hernandez responded to my email and scheduled an interview. I was hired by the end of the interview as P.S.123M's new IEP Teacher.

7. I was eager to apply my special education expertise to support the students of P.S 123M as the new IEP Teacher.

8. However, little did I know that Principal Hernandez's decision to hire me was just a short-term year's plan and calculated ploy to take advantage of my extensive special education knowledge and IEP process expertise in order to prepare a younger, less experienced teacher to take over my job by sabotaging my work and harassing me to leave.

1

Background

9. When I met Principal Hernandez at my interview appointment in August 2015, I presented an extensive resume, to include adjunct positions at four New York universities and colleges, specializing in cognitive development, assessment of reading, research in education, and IEP development and planning, to include special education Federal laws and New York State special education regulations.

10. During my interview, I presented Teacher and Related Service Report forms that I had developed in my previous school as IEP Teacher, as well as other forms to assist with IEP development and the meeting process. It was clear that P.S. 123M had no system of IEP development or organized special education process in place, to include the absence of secured, Confidential Special Education Files for all special education students, which is a requirement by federal law and state regulations, posing a serious violation for the school.

11. Furthermore, I had informed Principal Hernandez that during my time as the IEP Teacher in my previous school, I had authored the only course syllabus in writing IEP's for the Department of Education's Afterschool Professional Development Program (ASPDP), an offering of credit-based courses by the New York City Department of Education to teachers and other school staff to accrue the additional credits necessary to move to the next salary steps. I taught this and another original course syllabus that I wrote.

12. Federal law, under the Individuals with Disabilities Act (IDEA), requires that every student identified with a disability must have an Individualized Education Program (IEP). An IEP is a detailed multi-page written document required by law which must contain the results of the most recent evaluation; student's strengths;  concerns of the parents in the areas of academic, social, and physical; the academic, developmental and functional needs of the student, including results of the student's performance on any general State or district-wide assessment programs. This must be reviewed, in the least, annually at a meeting consisting of the parent(s), teachers, and related service providers, if the student receives additional services such as speech and counseling. After the meeting, when the IEP has been completed, the parent receives a copy.

13. The IEP Teacher (which originally replaced the Agreement's Education Evaluator position) is a New York City Department of Education and United Federation of Teachers contractual, centrally-funded out-of-classroom position, as also outlined in New York City Department of Education's Standard Operating Procedural Manual (SOPM) with duties related to special education compliance to include attendance, as the IEP Teacher, at "initial" IEP meetings with the school psychologist for newly-recommended general education students who have been evaluated. It also allows, at the principal's discretion, for other duties for the IEP Teacher created

2

by the principal relating to the whole IEP process such as contacting parents and setting up meetings, generating and sending annual IEP meeting notices to parents, inputting all information into the computerized special education system, preparation for the planning for student services with and without disabilities, and for additional duties to include providing special education professional development to the staff.

<u>First Year, 2015/2016</u>

14. Prior to my joining P.S. 123M, the teachers of P.S. 123M were assigned to write their own students' annual IEPs.

15. This policy was continued and further memorialized in a request by Principal Hernandez for me to write a document for P.S. 123M's newly-developed IEP process with IEP process duties and timelines for all staff involved in IEP development.

16. I presented it with Ms. Louise Kapner (a private "consultant" paid by Ms. Hernandez) on November 17, 2015 to several of PS. 123M's special education teachers, after which was handed out to the other special education teachers.

17. One of the most important duties that I was given by Principal Hernandez during the first year at P.S 123M, was that I had to hold meetings for and "finalize" over one hundred (100) new annual IEPs for the school's students with disabilities, meaning that I was to review and make sure that the IEPs were correct in all of their sections and only then, after all was reviewed and corrected, to "finalize" IEP's that the teachers had written into the special education computer system, at which time my name would forever be in the system as the person responsible for the IEP. As the IEP is a legal document, I took this responsibility very seriously.

18. Prior to starting the school year, I informed Principal Hernandez, in an email in August 2015, that there were several outstanding IEPs in serious violation of special education law that had not been finished since 2014 and 2015 of the last school year. Subsequent to this email, I continued to inform Principal Hernandez, via emails, of the serious violations in special education compliance that I had discovered in reviewing students' IEPs and their services in the computerized system.

19. Additionally, I provided individual and/or small group academic support for SETSS students (Special Education Teacher Support Services, a program under the Continuum of Services for students with disabilities). Such academic support service would be warranted and provided, as evidenced by a particular special education student's IEP.

20. Principal Hernandez told me that my out-of-classroom position did not require observations, and I was not observed, during the 2015/2016 school year by Principal Hernandez and/or Assistant

Principals Johnson and Dunning for either my IEP work or my support academic work with SETSS students, resulting in no written observations for school year 2015/2016.

21. Principal Hernandez, Assistant Principal Johnson, and Assistant Principal Dunning, to my knowledge, did not hold any special education licenses. However, Assistant Principal Dunning occasionally kept abreast of my role as the IEP Teacher in the whole of special education process and special education compliance at P.S. 123 M.

22. During school year 2015/2016, I received no letters to my Teacher File of any nature, no disciplinary letters requiring my signature, nor was I accused of professional misconduct, insubordination, or unsatisfactory teaching or negligence in IEP-related duties in any letter by any administrator during that first year at Renewal School P.S.123.

23. During school year 2015/2016, I was encouraged, by Principal Hernandez, to mentor a young special education teacher, Michelle Malverty, who, at the time, had been teaching in a special education classroom with a special education license (The 01/31/17 School Seniority List, indicates Ms. Malverty's seniority as 5 years, 4 months, 24 days).

24. I worked closely with Ms. Malverty throughout the 2015/2016 school year, which continued into the 2016/2017 school year, instructing her on IEP development and special education laws and regulations. I taught her how to write an IEP and how to align the academic assessment and performance needs of special education students to applicable special education programs.

25. Despite having two major surgeries during the 2015/2016 school year, I maintained my exemplary attendance record and professional responsibilities and received a "Satisfactory" rating at the end of the school year.

26. As time went on, the teachers in the school, all of whom were younger than I, failed to meet their responsibilities to prepare and write the annual IEPs for their students, as required by federal law.

27. Principal Hernandez, as was her ultimate plan to oust me the second year in favor of the younger teacher Michelle Malverty after she used me and my expertise for her purpose, made me her scapegoat for her school's failure to comply with the law.

28. This played out as the school year progressed through accusatory emails and other written communications, to include letters to my file riddled with false accusations and false information, made me the scapegoat for her school's failure to comply with the law.

The IEP Crisis Worsens and the Plan to Make Way for the Younger Teacher Is Put Into Action

4

29. By not maintaining vigilance over the younger teachers and those teachers with whom she wanted to avoid conflict, such as the UFT Chapter Leader, whose IEPs were egregiously in violation of special education regulations and whose IEPs were out-of-compliance for more than two school years, all of which was evidenced in the special education computer system, SESIS, Principal Hernandez created a crisis in her school. IEPs were either not written, were incomplete, the teachers who taught students the year before had left, or students had graduated without an IEP. As a result, students didn't have a current IEP and/or appropriate services and parents were never given a copy of a current IEP.

30. By March, 2016, although I held annual IEP review meetings with the parents and teachers in compliance with the annual timeline requirement, matters had already reached crisis proportions as teachers failed to provide information to me for the IEP.

31. All along, during that first year, I had expressed my willingness to Principal Hernandez to write and correct IEPs in order to insure that all IEP violations (as a result of the teachers' failure to produce quality and timely IEPs to support students' special education needs and services) were corrected, allowing for P.S. 123M to be back on track in compliance.

32. I continued to inform Principal Hernandez, all through the first year, that the compliance crisis was growing and that since spring is the heaviest time of year for annual IEP meetings reviews of the previous year's IEPs and the writing of the required new annual IEPs, we needed to catch up with the multitude of out-of-compliance IEPs of not just the current year but of previous years which still had not been corrected by the teachers.

33. Finally, to my knowledge that the majority of IEPs had not been written for the current year and past IEPs were still out of compliance, Principal Hernandez sent an email, dated March 16, 2016, telling the teachers that I now was "offering" to write their IEPs.

34. However, the teachers never sent their Teacher Reports to me with the required information for the sections of the IEP that she stated they were to do.

35. By late spring 2016, the situation was continuing on a critical and frenetic level for me.

36. The burdens and undue stress now purposely placed on me in implementing the process of special education law that should be a collaborative effort, was now causing me unending stress. Principal Hernandez began ratcheting up her harassment, even after I returned from my second surgery.

37. At the same time Principal Hernandez wanted me to write all of the IEPs only now, so late in the school year during the most hectic time of year for IEP meetings and IEP writing, and to complete the current year's IEPs since the teachers, again this year, had not written them, such was preventing me from reviewing and finalizing previous long-outstanding IEPs into the SESIS system to give to the parents.

38.  I was still trying to back-track and get the teachers to provide information for the previous year's IEPs and trying to get the much older out-of-compliance IEPs completed. Many parents, both this current and the previous year, had not been sent a current IEP, which increased the violations of special education law at P.S 123M.

39. All of this was wearing me down and I was finding myself in a state of constant nervousness.

40. Calculated emails began to falsely accuse me for the special education crisis at P.S. 123M.

41. On May 24, 2016, in an email to me, Principal Hernandez accused me of being *"inconsiderate to the process and to your [my] colleagues"*.

42. As a continued smokescreen, Principal Hernandez had purposely created chaos in my workday. She created a purposeful hostile work environment for me, to include divisive written statements to my peers about me.

43. On May 24, 2016, in a follow-up email to Principal Hernandez, I reiterated the problems of the entire year that have ensued and identified the verbal and written abuse, mistreatment, and arguments to her false accusations of creating the special education crisis at P.S 123M, impacting on the students and their parents.

44. In my email, I also expressed my displeasure with Assistant Principal Johnson who screamed at me that I am "a liar" in front of a visitor to the school during a meeting in Principal Hernandez's office on that day.

45.  On May 26, 2016, in an attempt to surreptitiously go behind my back, an email was sent to teachers with a statement clearly meant to purposely ostracize me from my peers and to discriminate me from have the same opportunity to do extra work for per session monies. Principal Hernandez and her administration was denying me equal opportunity to benefit from what was offered to younger teachers.

46. On May 26, 2016, Assistant Principal Dunning, copied to Principal Hernandez, sent the following email offer to teachers but not to me:

*Hi All,*

*The IEP situation has become critical. I have attached a document to support you in writing measurable goals. In an effort to finalize IEPs, I am asking any of you to come to school with me on Saturday, June 4 at 9:00AM. You will be paid per session. Our purpose will be to finalize a*

*minimum of 25 IEP's. Please see me if you need support with your SESIS access. It is vital that we get these IEP's completed, the state will come in to audit us. I have not included Ms. Rosen in this correspondence. I am confident, we can get this done.*

*Yes, I will provide breakfast.*

*Please inform Ms. Gonzales.*

*Thank you in advance.*

*In collaboration,*
*Mr. Dunning*

47. I found out about this email only because one of the teachers who received it gave a copy to me.

48. This email was a purposeful attempt, while all along faulting me for the special education problems in the school, to ostracize me from the staff with whom I should be working in a collaborative effort to fix the crisis of out-of-compliance IEPs. Assistant Principal Dunning's email was designed to prevent me from participating in an emergency weekend per session opportunity for extra money, clearly a discriminatory act on the part of administration. Furthermore, it was an attempt to keep me out of the loop of finally, after an entire school year has gone by, to do something about the violations of special education in denying student rights of a proper IEP and services.

49. In June 2016, at the end of the school year, rather than acknowledging that the school and teachers did not comply with the IEP requirements of each student, Principal Hernandez falsely attacked me for the continuing problems by writing negative comments on my end-of-school-year School Rating Sheet, dated June 24, 2016, citing me as the cause of all the disorganization:

    *"Communication and completion of IEPs not completed in a timely manner and lack of feedback to families of the process."*

50. Due to these false and derogatory comments, I filed a Rating Sheet Grievance, and Principal Hernandez, in a Grievance Hearing decision, dated 2/23/17, agreed to remove the objectionable comments and issue a Rating Sheet with a *"Satisfactory"* rating, minus the derogatory comments.

51. Despite working under the continuous pressure of the previous hostile and chaotic year, all the while mentoring younger teacher Malverty, I was determined to do my best in applying my special education expertise and efforts in order to insure for correct IEPs, as required by law.

52. During my summer July 2016 work at P.S. 123M, I prepared and/or corrected and finalized eleven (11) unfinished and out-of-compliance IEPs. However, my working relationship with Principal Hernandez become increasingly tense and she often expressed it in emails to me.

7

53. Additionally, during summer 2016, for the 2016/2017 school year Teachers' Handbook, I was asked by Principal Hernandez to write a new procedure document outlining the school's newly-developed annual IEP protocol that I created, to include my IEP Teacher role and the role of teachers and related service providers (i.e. occupational therapist) in the development of the IEP. This chart, with its timeline and the cooperation of staff, if adhered to, would avoid any future violations of special education compliance.

54. While working at P.S.123M during July 2016, I reminded Principal Hernandez, in emails, of the Federal law requirements of the *Chapter 408* documents to be presented for signatures by all staff working with students with IEPs. Principal Hernandez received these emails with my requests to prepare these forms with her new school letterhead and to schedule in her agenda, on the first day that staff returned to school in September 2016, the Professional Development session for staff that is required by law.

55. I wrote and submitted insertions for the school's 2016/2017 Teachers' Handbook as an informational source for teachers and staff to this very important *Chapter 408* federal law requirement. They were included into the Teachers' Handbook.

56. On August 4, 2016, Principal Hernandez sent me an email summoning me to come into the school for *"an urgent matter"*, and when I arrived at P.S. 123M on August 5, 2016, she stated that the *"urgent"* matter was that she would like to know if I would go back into the classroom as of the beginning of the school year 2016/2017.

57. This question alarmed me and I told Principal Hernandez that I applied for an out-of-classroom IEP Teacher position upon my hiring and had reapplied for the second year as required. I told her that I had no intention, at this point in my career, to return to the classroom as a classroom teacher and that I loved my position as IEP Teacher which I have held for several years at my previous school and for which I specifically applied for in August 2015 when joining P.S 123M.

58. Under the circumstances, during the summer, when she already had my email and application to her job posting expressing my desire to continue as the IEP Teacher for the coming year, I perceived this as an odd and unusual pressure on me to leave my IEP Teacher position.

59. It was, at this time, that I realized that she had plans to replace me all along with younger teacher Malverty, given the hostile work environment, the blaming of all problems on me, the discrimination and ostracizing actions by administration, and her encouragement for me to teach younger teacher Malverty all that I know about special education and the IEP process.

## Second Year 2016/2017

60. On the first day back in September 2016, I learned that no preparations had been made for the Chapter 408 requirement, as mentioned previously in paragraph 54, nor had the required session been included in her agenda.

61. On that first day, I was introduced to new, young Assistant Principal Joshua Furnell, who had replaced Assistant Principal Dunning, and, to my knowledge, had no special education classroom or supervisory experience.

8

62. Principal Hernandez announced that he would be supervising me.

63. On September 7, 2016, I followed up with an email to Principal Hernandez reminding her that the Chapter 408 requirement was not fulfilled as of the first day of school and that I sent two previous emails to Principal Hernandez on July 18, 2016 and a follow-up email on July 28, 2016 reminding her of the requirement by law. On that day, Principal Hernandez screamed at me in the cafeteria which was memorialized in my email.

64. However, the continued harassment began immediately the first week of the new school year: Principal Hernandez immediately had me sign a disciplinary letter for my Teacher File fabricating a scenario that I was negligent in my duties regarding Chapter 408 requirements.

65. This letter to file was an intentional effort to harass me. It was purposeful and absurd because all of my emails to her during the summer surely proved that I was not guilty of any negligence.

66. Despite the urgency of the need of my attention to the seriously out-of-compliance IEPs from the previous school years, immediately upon return to school in September 2016, Assistant Principal Furnell started bombarding me with unusual, overly burdensome, and unnecessary paper, computer, and clerical work assignments which were out of the scope of my job under the Department of Education and The United Federation Teachers Agreement.

67. These were purposeful efforts by administration to sabotage and interfere with my responsibilities as the IEP Teacher.

<u>Over burdensome Work; Not Within the Scope of the IEP Teacher or Teacher's Duties</u>

68. I was directed to do time-consuming busy work: weekly detailed Excel documents (I had never worked on an Excel document, nor did I have any skills associated with it which was memorialized in emails to the Administration), oversee a magnetic wall chart with hundreds of boxes for use with multi-colored magnetic tabs, and to present up-coming weekly "schedules" which is in violation of the New York City Department of Education and United of Federation's Agreement, diverting me from my important and critical IEP work, which included the input of all phases of IEP planning and development into the computerized New York City's Department of Education's special education system, SESIS.

69. All of the busy work made no sense, except as a way to wear me down, as the SESIS computer system was created to maintain the history of all of individual student case management: student data, special education information, appointments, evaluation data, records of communication with staff and parents, dates of meetings, IEP information, etc.

70. All administrators had access to this special education computer system and were able to monitor compliance and IEP-related work at all times for every student with and without a disability in the school, if put into the system by the school psychologist when initially opening up a case.

71. The absurd and abusive demands of over burdensome paper work placed on me to wear me down, as well as the continuing emails and disciplinary meetings and letters were causing me great

stress.

72. The administration was also aware that the directives to produce this unnecessary, tedious, and arbitrary record-keeping which is not required, as indicated by the far-reaching practice in New York City schools for special education compliance or IEP case management to utilize the SESIIS computer system to make the IEP process a minimal paper-laden process, was in violation of the Department of Education and United of Federation of Teachers Agreement to not give over-burdensome paper and clerical work to teachers.

73. Despite all of the extra pressure to do this extra work, I remained in compliance with my role in IEP meeting preparation, in acting as the District Representative in chairing the IEP meetings with parents and teachers, and developing and writing all currently due annual IEPs while continuing to oversee IEP's that were not prepared by the teachers in previous years.

74. I continued to perform my IEP Teacher duties according to Renewal School P.S. 123M Staff Handbook's Special Education Procedure Chart, which I was asked to write during summer 2016, containing a chronology of my specific responsibilities as the IEP Teacher, as well as the teachers and related service providers, for the IEP process for school year 2016/2017.

75. Additionally, my duties only further increased to now include being responsible for not only organizing and holding meetings and writing all IEPs (more than 100), but was made to perform other demanding and non-IEP Teacher duties such as administrative duties, in and out of the school office, assigned by Principal Hernandez and other administrators as the school year progressed.

76. Despite my intense work load that, for my part during the previous year, was always in compliance and the immense organization of the IEP process that I had put into place at P.S. 123M, Principal Hernandez effected an onslaught of harassing and hostile disciplinary meetings and letters to my file, beginning with the Chapter 408 issue and letter to file on or about September 8, 2016, to which I first referred in paragraph 54 above.

77. Principal Hernandez, Assistant Principal Furnell, and Assistant Principal Johnson began calling me constantly to the office for disciplinary meetings, as evidenced in the countless emails and letters summoning me to the office with follow-up letters to my Teacher File, containing false statements and criticizing my performance and threatening termination.

78. Continuing shortly thereafter, I received multiple unsatisfactory observation ratings for my one-to-one support service for individual and small group special education students in my office.

79. These unsatisfactory ratings included a letter to my file directing me to nonsensically apply "The Workshop Model" developed for whole class application, as defined and explained in a New York City Department of Education's pdf, *The Workshop Model,* designed for classroom teachers,

which I was not nor did I have a class/classroom of students with registers beginning in the 20's which is required for a Workshop Model's whole class lesson, spanning more than one period.

80. I received a letter to my file, dated November 16, 2016, in which I was cited for not complying with

   *The Workshop Model.*

Inappropriate Administrative Assignments Not Required By Other Teachers

81. Additionally, since the beginning of the school year, as memorialized in emails, to disrupt my IEP work, as there was no special education administrator,  I was called continually to the office, at all times of the day, to deal with special education problems that an administrator is supposed to handle.

82. As recognized with an expertise in special education law and process, I was forced to abandon my full daily schedule of IEP duties as well as the few students I saw that was on my schedule to handle agency, legal, and out-of-state issues concerning students with disabilities, angry parents who did not get their copies of IEPs which put me in a vulnerable position in having to placate parents while knowing there was no IEP to give them, parents with students who had been dropped by charter schools and have returned back to our community school, trouble-shooting incorrect placement in P.S. 123M's  general education and special education classes for new students who arrived to P.S 123M, as well as  following up  with out-of-state schools in order to get the IEPs of special education students who had transferred to P.S.123M, at all times trying to maintain and keep up with my own responsibilities as the IEP Teacher.

83. All of this further diverted me from my time-consuming work in scheduling the current year's annual IEP meetings by calling parents, sending computer–generated meeting notices to parents and teacher-participants, collecting Teacher and Related Service Reports and writing a correct narrative to include the academic and performance information that I was supposed to be getting from the teachers to put into the computer IEP form, while, at the same time, being directed to "back-track" the noncompliance IEPs from the year before.

84. This caused me great mental and emotional stress as well as physical stress as Principal Hernandez was now stepping up her efforts in her harassment by the overly burdensome and inappropriate record keeping demands, and by her false statements and accusations in her letters to file for which I was forced to sign, while sending new Assistant Principal Furnell up to my

office to continually harass me while I was trying to work and continue to burden me with demands not within a teacher's duties.

85. On December 23, 2015, Principal Hernandez sent this email to me at 6:52 AM on the day I was to leave for my scheduled surgery:

> *Jane,*
>
> *I hope you get this before your surgery. Please send me the variances. I need them today.*

86. In this email, Principal Hernandez referred to a "variance". A variance is a document prepared by school administration which is in application to the New York State Department of Education to open up a specific "special class" to allow for additional students, more than the maximum students, as mandated by law for that particular type of special education class.

87. Not within the realm of a teacher, such a lengthy procedure assignment of an administrative nature was oftentimes asked of me which caused me undue pressure.

88. Principal Hernandez's email typifies her intent on using me to do her administrative duties by taking away my opportunity to remedy the critical task that I had repeatedly informed her of: the serious non-compliance of long-standing unfinished IEPs. However, at the same time, she continually faulted me for the current IEP problems in the school.

### 2016/2017 School Year Salary Grievance Based on Discrimination and Preferential Treatment of Assigning the New and Younger Teachers

89. I filed a salary grievance early in the 2016/2017 school year because Principal Hernandez refused to grant me the four days of per session that I correctly applied for. One of the requirements for the job was that a teacher have previous years' satisfactory teacher ratings.

90. As was Principal Hernandez's practice, she would send, in violation of the Agreement, postings through the mail during the summer (Job postings must be posted during the school year for all teachers to have an equal opportunity to apply) to newly-hired teachers urging them to apply.

91. Principal Hernandez, at the beginning of the year, did not assign me to any ELT per session. Upon receipt of my emails, Principal Hernandez assigned me to another day's per session. That still didn't fulfill my application for the days requested.

92. Principal Hernandez, in violation of the Agreement, assigned me to give professional development in writing IEPs to teachers on Tuesdays when no such "PD" should be assigned, denying me my right to do per session work on that day. However, most teachers did not show up

to the "PDs", to include other special education teachers who she showed preferential treatment to certain teachers, such as those teachers referred to in paragraph 29, and assigned them ELT per session despite the directives that special education teachers were assigned to attend the "PDs" on Tuesdays.

93. Furthermore, she assigned all of the new teachers, all much younger than I, to as many days of per session as they requested, ignoring the mandatory requirements in the per session job posting for previous "satisfactory" performance ratings.

94. As a result, I only worked two (2) days of per session for the school year 2016/2017.

95. As stated, I filed a Salary Grievance which Principal Hernandez denied at the school level.


<u>2016/2017 School Year Punitive Per Session Assignment Creating a Threat to My Safety</u>

96. In retaliation to my filing  the Per Session Grievance denying me the four days for ELT per session work for school year 2016/2017 for which I applied in June 2016, Principal Hernandez assigned me only one day a week: the 8th grade class. That class was so out of control and dangerous that Principal Hernandez hired a man to sit in a chair outside the classroom door daily to add presence so that students might exhibit less dangerous behavior. I had never seen that in any school throughout my teaching career.

97. In my email, dated November 17, 2016, I documented the dangerous behaviors and lack of organization for work and planning that was supposed to be provided for these students' extra learning time as the New York City Department of Education's Renewal School plan required for which Principal Hernandez's school P.S.123M, had no such plan or materials. I was not a middle school classroom teacher nor was I instructed to do any specific work. If they were told to do specific work by their classroom teacher who had left for the day, they would ignore the instructions. Instead, they played cards, hit each other, jumped on desks, ran out of the room, disappearing prior to dismissal, etc. Calling the office for support fell on deaf ears.

98. This was an abusive assignment and purposeful to cause me great stress. Except for the technology teacher who just sat the students in front of a computer when in her technology room, no other middle school teacher wanted this assignment because of the notorious and dangerous behaviors of these the students during the day.

99. On one occasion, after a library table had been broken while the class was in the library, I was to the only teacher assigned in the room with this class. I felt very threatened and unsafe. Students were hitting each other and even the young "Y" (YMCA student program to assist in afterschool) person assigned to sit in the room remained on his cell phone and ignored the problems. Calling to the office did not bring any support or relief.

100. In my email, I stated that I would like to be moved to another assignment if the dangerous behaviors continued which they did. Principal Hernandez did not respond to my email and the behaviors continued. On a few occasions, Assistant Principal Furnell sat in the class for a short time but when he left the students were again out of control and exhibiting serious safety issues. I didn't quit because I needed the money as Principal Hernandez refused to assign me for the other days to which applied.

101. There were other classroom assignments available for me as teachers had left or decided not to do per session, but Principal Hernandez continued to ignore my requests for a change and kept me in that hostile and threatening environment.

Under: On-Going Divisive Tactics to Pit Teachers Against Me

102. At the end of November 2016, Principal Hernandez began her divisive tactics in pitting school staff against me.

103. Principal Hernandez's *Staff Notes* to staff, dated November 27, 2016, informed the teachers that she would post a 2-part Special Education online Survey and sent a follow-up email on November 27, 2016 with the directive that "*All teachers should respond as we all service students with special needs.*" A follow-up email to teachers, dated December 12, 2016, thanked teachers for their responses.

104. In this survey, Principal Hernandez surreptitiously included questions about my performance for my peers to rate. This was not only divisive but was an affront to the efforts that I had been putting forth to clean up the special education mess that I came upon when joining P.S. 123M's organization.

105. Instead of managing special education compliance and simply directing teachers to do the job that they were mandated to do, in this 2-part Survey, Principal Hernandez's intention was to point fingers to my planning, continuing to seek fault with my efforts. This time, instead of just the administration harassing me, she would use negative input from teachers to support her harassment and intentions to get rid of me.

106. In an email to Principal Hernandez, I requested that she provide me with a redacted copy of the 2-part Special Education Survey (https://www.surveymonkey.co/r/QXMWLCD) which had since been removed from the original sending email. She did not reply to my email nor did she forward this survey. The results were never published. However the damage had been done to me in her continuing efforts to incite the staff against me, to include spending an absurd amount of time, weeks, to revamp the new Teacher Report which was far more complicated and demanding than the one I had created.

107. As the weeks went by, I was continually bombarded with multiple letters to file threatening termination from Principal Hernandez, Assistant Principal Furnell (who was removed from the school mid-year after he had personally done Principal Hernandez's damage to harass me with emails and letters to file and overburden me for the first half of the school year), and from Assistant Principal Johnson, containing egregiously false information regarding special education students' records and my duties as IEP Teacher, to include alleged negligence in the delivering of academic support to the few SETSS students.

*108.* In a last effort to harass me before the holidays and Winter Break, a day before the letter dated December 23, 2016 from Assistant Principal Furnell citing professional misconduct, which is referred to paragraph 135, I received another letter to file from Assistant Principal Johnson, threatening and "*adverse rating*" and "*charges that could lead to termination*".

109. In her letter, she accused me of alleged "*criticism of staff members and the administration when IEP deadlines are not met does not contribute to this goal*".

110. This ludicrous and false statement and the fabricated scenario behind it to picture me as the problem can be easily refuted with the dozens of amicable and collaborative emailed correspondence I had with staff. Such a ploy was an intentioned divisive tool to push the staff away from me and to prevent me from getting the correct job done as I had attempted to do all along, as well as take the responsibility off the administration.

111. Among the emails alleging my improper response to a speech teacher's lack of submission and timeliness in providing information for the IEP, Principal Hernandez, on October 12, 2016, sent an email to me while having copied the speech teacher and Assistant Principal Furnell on it:

> "*Ms. Rosen,*
>
> *Please check the IEP online before we accuse others of not completing the IEPs as these errors hold-up our process and convey disorganization. Ms. XXXXX, next time do not hesitate to send this email as soon as an inaccurate statement is made of your work.*"

112. The "disorganization" to which Principal Hernandez refers is clearly her own doing and her administration's: I subsequently forwarded to Ms. Hernandez all of the proof from the SESIS system and my previous emails to the speech teacher continually requesting the correct IEP documents, all of which supported my truth.

113. Again, as in so many circumstances before, spanning months, I was forced to waste more time in order to defend myself against baseless attacks of my work integrity.

15

114. The continuous summoning to the office for disciplinary meetings and the accusations and attacks in emails and letters to file continued to stress me as I was constantly being forced to defend myself in writing responses to emails and in filing grievances.

115. At the same time I was still trying to do my daily IEP work. It became unnerving to try to keep up with my current work, the additional unnecessary busy-work, and the improper administrative duties thrust upon me in the office with special education school issues, while, at the same time, being constantly harassed by faulting me with the IEPs that remained out-of-compliance, as evidenced in non-stop emails by administration.

116. By October 2016, I could not withstand the escalated harassment and blame for special education non-compliance.

117. I wrote Principal Hernandez a very long, detailed letter, dated October 30, 2016.

118. In it, I outlined the history of P.S. 123M's, non-compliance and the harassment that I was experiencing hoping that I would finally get some relief along with a reversal in the harassing letters to file and derogatory emails and observations.

119. However, my letter fell on deaf ears and the harassment, abusive work demands, and the hostile school environment continued with more disciplinary emails and letters.

120. I continued to write to Principal Hernandez of my concerns regarding the chaotic and worsening IEP situation. However, they were met with hostile and accusatory responses.

121. All throughout my time at P.S. 123M, I proposed solutions to the special education out-of-compliance chaos. Without heeding my advice of last and the current year, which is memorialized in emails sent to Principal Hernandez, now that they saw that the situation was far more critical because students and their parents were being denied their rights for so long, Principal Hernandez and Assistant Principal Johnson directed me to do illegal things with legal documents.

I Was Directed to Engage in Illegal Activity

122. On November 30, 2016, in a meeting with Ms. Johnson set up by Ms. Hernandez, as memorialized in an email of the same date, I was directed to "fix" and finalize IEPs that should have been written in the prior two years by teachers who taught these special education students.

123. I was directed to do illegal actions regarding approximately sixteen (16) out-of-compliance IEPs (some from 2014 and 2015), to include filling in blank spaces left by former teachers that should have contained the previous academic performance information as well as information of behavioral and physical strengths and needs of the students at the time the student was in that class (with those teachers) of a certain year.

124. I was directed to finalize improper IEPs into the SESIS system which had not served the students in their previous year(s) at the time because they were never written.

125. This denied these students their rights under IDEA, Individuals with Disabilities Act. Students should have been receiving services, as per their IEPs, while being taught by those classroom teachers who should have completed these IEPs.

126. As the IEP is a legal document and knowing that my name would be associated with the finalized document and that I would be legally responsible for each IEP and held accountable in any future legal proceeding regarding the student's special education rights, I did what I thought would be the ethical thing to do: I did not fabricate any student performance or input any testing scores, etc. on any IEP, as I was not the student's teacher at the time the IEP should have been written.

127. As a result, in the IEP in the computer special education system, SESIS, I filled in empty IEP sections with X's, identified sections that did not have proper teacher input, and copied and pasted the email directives, naming Principal Hernandez and Assistant Principal Johnson, along with other Department of Education staff persons involved in specific student IEPs, as having directed me to do such improper and illegal actions on these IEPs.

128. I cut and pasted these improper emailed directives in the *Events* section of each non-compliance case, a notated history of communication with parents and staff, to include the chronology of the IEP process and any notations of IEP-related documents sent or received regarding a student's evaluation and performance

129. Principal Hernandez, in her own dereliction of duty to protect students with disabilities and their rights, purposely placed me in a very stressful and vulnerable position.

130. By December, 2016, the school was critically out-of-compliance with the current year's IEPs.

131. The letters to file continued, as well as the over burdensome work, the accusations of blaming me in the non-compliance of IEPs, the lack of monitoring the younger teachers who had the responsibility to write their students' IEPs, and the increasing hostile work environment of pitting teachers and staff against me.

132. Furthermore, I was continually placed in stressful situations on several occasions, among which were directives from Principal Hernandez to produce fraudulent documents to send to the Department of Education's special education department which was supposed to represent required school organization and collaborative responsibilities in special education.

133. During School Year 2015/2016, Principal Hernandez directed me to send into the Department of Education, via email, required special education school documents, which were supposed to be created by a "team".

134. This mandated "team", the School Implementation Team (SIT), which is supposed to be comprised of several staff members, including teachers, administrators, etc. to address special education needs of the school, never existed during the 2015/2016 school year. I was the "team".

135. Principal Hernandez instructed me to add names that she gave me, create the required New York City Department of Education documents, and send them through the computer in the name of a fictitious SIT Team, although I reminded her that we need to meet as a team. This is documented in emails and in the actual documents sent into the Department of Education. This "team" never met.

136. Principal Hernandez also relied on me to act as an administrator of special education by placing full responsibility on me to handle special education administrative matters in the school office.

137. Principal Hernandez used such an opportunity of inappropriately placing me in a stressful position to have to deal with an agency regarding a student by accusing me of professional misconduct in a letter to my Teacher File from Assistant Principal Furnell, dated December 23, 2016. That incident was noted in my email to an agency supervisor because I would not give information to an agency worker since the worker could not produce proper identification while in the school at the time.

138. In this case, as sent to me via email from the supervisor with which I had subsequent communication to discuss the case worker's improper behavior, protocol for identification had changed unbeknownst to me. The supervisor sent me an instructional Power Point describing the change that had been previously sent to all principals.

139. However, Principal Hernandez neglected to turnkey any of this information to staff and took advantage of the situation by unjustly disciplining me with a letter to file. Although I presented my correspondence with the supervisor, Principal Hernandez ignored this information and persisted in accusing me of misconduct in the letter to file she refused to withdraw.

140. Furthermore, Principal Hernandez "played games" with federally mandated special education and general education teacher assignments in staffing special education classes. This was commonly known amongst staff, as she asked staff to do illegal things when it came to teaching in special education programs.

141. Although I alerted Principal Hernandez to the parameters of how specific special education classes needed to be maintained by permanently assigned special education and general education teachers, Principal Hernandez repeatedly violated students' rights by not providing the classroom teacher assignment as mandated by law. As a result of this, Principal Hernandez continued

violations of Federal law in not providing the mandatory participation by specific teachers at IEP meetings as required by Federal Law.

142. The teacher requirement could not be properly represented at IEP meetings because special education students either had no appropriate teacher who Principal Hernandez arbitrarily assigned to the class to make it appear that the class was covered by a required legally licensed special education teacher or the class had no teacher at all to fill the mandatory position. .

143. Younger teacher Malverty, the "Model Teacher" with specific duties as outlined in her official job description, which did not include being the special education teacher assigned as a permanent part of a specific special education program teacher team, the *Integrated Team Teaching* (ICT) program, under Federal law, and for which Principal Hernandez receives money for staffing for that special education classroom, was used to "fill in" so that it would appear that there is a special education teacher for that specific class.

144. Teachers, in many instances, were not only used improperly to cover up class violations, but were assigned to IEP meetings as a ruse of being the special education teacher where there was none on record as it should be.

145. This was a direct result of Principal Hernandez either having removed a special education teacher from a class permanently or a teacher who had quit which, in both instances, Principal Hernandez never hired permanent teachers to fill these empty required positions required by special education law. So, she jockeyed around teachers to make it look like everything was in compliance with the law.

146. I attempted to express how this was a violation in emails, but Principal Hernandez continued to assign younger teacher Malverty to improperly sit in at IEP meetings, with parents present, having parents believe that their children had an assigned special education teacher for that *Integrated Team Teaching* (ICT) special education program.

<u>I Was Replaced by Younger Persons</u>

147. Throughout the School Year 2016/2017, Principal Hernandez continued her effort to put pressure on me through her harassment tactics in the hopes that I would leave her school, opening the door for younger teacher Michelle Malverty to take over the IEP Teacher position.

148. She began the school year by informing me that younger teacher Michelle Malverty would replace me as the Special Education Liaison, a position I had held in the previous year in representing P.S 123M at out-of-school monthly Department of Education special education meetings. She would attend these meetings with Assistant Principal Furnell.

149. Unless I verbally asked or sent emails, I would not be given the information or the hand-outs of important special education news and protocol disseminated by the New York City Department of Education at the liaison meetings.

150. Upon return from the Winter Break, and continuing through the subsequent months, the hostile and harassing actions by the administration continued. Principal Hernandez systematically removed my IEP Teacher duties for which I was hired.

151. In this blatant email, dated January 16, 2017, as a slap in the face to this IEP Teacher who was given the responsibility for the IEP process at school and who has been the victim of continuous harassment, Principal Hernandez wrote to younger teacher Michelle Malverty, who was not supposed to be doing such work as the *Model Teacher,* as per the New York City Department of Education's Model Teacher pdf :

> "*Malverty,*
>
> *What do you think about an all day clinic half day for elementary and half day for middle school as we have done in the past when Richard does his training. That way we can process together and maybe create an IEP together, using the new teacher report and recent data, Let me know your thoughts."*

Principal Hernandez's plan to get rid of me was now taking many forms.

152. In January 2017, Principal Hernandez, in an extreme action, removed the majority of my IEP Teacher duties and reassigned them to younger teacher Michelle Malverty and Family Worker Luz Melo,

153. These IEP Teacher duties were assigned to younger teacher Malverty and to a younger Family Worker Melo, whose specific New York City Department of Education positions are detailed in New York City Department of Education's published documents outlining their job description and duties, neither of which include the duties of the IEP Teacher or the duties that were removed from my assigned IEP-related work load.

154. Younger teacher Malverty, with far less seniority and experience than myself, instead of meeting her mandatory duties as Lead/Model Teacher (classroom-based) with specifically defined duties to her position as Lead/Model Teacher (as outlined in a New York City Department of Education pdf document, and as per the UFT/DOE Agreement, and paid, as Lead/Model Teacher to set up a "model" classroom in the school, with a substantial additional monetary allocation of several thousands of dollars in addition to her regular salary), was improperly directed to take over my duties by Principal Hernandez in emails and in Staff Notes to staff, although no such duties appear in the Lead/Model Teacher pdf document.

155. This blatant, public removal of my IEP Teacher duties and the lowering of my status in the eyes of my colleagues and school staff, as a seasoned special education teacher with vast experience and expertise, as Principal Hernandez purposely and blatantly announced Ms. Malverty's new IEP duties to staff in emails and in school memos, was demeaning and caused me great anguish and disconnect from my fellow teachers and staff.

156. Having trained younger teacher Michelle Malverty to perform special education requirements according to laws and regulations, to include correct IEP writing for these legal documents and, as a result, assigning her my duties, although improper to her role as Lead Teacher, Principal Hernandez and her administration stepped-up their hostile, retaliatory, and harassing behavior as the year progressed to cause me great stress, physical exhaustion and humiliation, to include pitting me against other teachers in the school, as evidenced in administrative emails and in a letter to file, in order to force me to leave so that she could replace me with the younger teacher Malverty, as evidenced by their intentions through emails and memos to staff..

157. Principal Hernandez and Assistant Principal Johnson, on or about January and February 2017, effected an extreme and demanding change to my weekly schedule of a drastic increase of teaching periods (reducing the IEP work periods) with changes of adding groups of students each period, representing sixteen (16) additional non-special education students from nine (9) grades (K-8) on four floors that I had never been assigned to at Renewal School P.S.123M.

158. Within a short time, my IEP Teacher duties and responsibilities continued to be systematically removed and assigned to the younger teacher Malverty and younger family worker Melo, while my teaching duties and physical demands of each day increased.

159. This caused chaos throughout the special education department, to include a severe negative impact on the work of School Psychologist, Kathy Rivera. Non-compliance interfered with her being able to properly "open", if at all, cases for evaluation, etc. Furthermore, the Family Worker, her assistant, was being given my duties which is clearly improper as per the SOPM.

160. Although my IEP duties and periods for such work were removed while my teaching duties and teaching non-special education periods heavily increased, newly-assigned Assistant Principal Velazquez (replacing Assistant Principal Furnell who was removed from the school by Principal Hernandez), and who was brought into P.S. 123M by Assistant Principal Johnson with whom she worked at her former school, was apparently assigned to monitor me.

161. One day, newly-assigned Assistant Principal Velazquez came into my office. Without any reasoning behind her action, she went right to my computer to take a phone photo of my computer screen's email that I claimed I had sent to Principal Hernandez regarding a meeting. This was unorthodox, intrusive, and demeaning. I memorialized this is an email sent to both administrators.

162. From September 2016 and until she was put into the Assistant Principal position sometime in January 2017, probationary young Assistant Principal Velazquez was the ESL Teacher at P.S. 123M (English as a Second Language), having arrived at P.S 123M with minimal classroom experience and, to my belief, no special education experience, and brought to the school by her friend, Assistant Principal Johnson, from their previous school.

163. Due to the ongoing harassing and disciplinary letters threatening termination by Principal Hernandez and Assistant Principals Furnell and Johnson, to include the overly burdensome recordkeeping and assigned administrative duties beyond normal teacher duties, as evidenced in the multiple dozens of emails representing attacks from the administration and my unending attempt to defend myself in emails, I had to continually file grievances to fight the improper discriminatory and harassing actions against me which caused me more stress.

164. These grievances included per session monies that she purposely denied me the previous and current year.

165. The unsatisfactory observations, the systematic removal of my IEP Teacher duties and removal of the majority of my work periods to perform these IEP duties, and the extreme assignment of increased teaching periods for sixteen (16) new students from Grades K-8 with no preparation, information or supporting work materials, while continuing to assign me to oversee compliance of special education mandates by directing me to review and correct all teachers' IEPs, was calculated to sabotage my career.

166. Principal Hernandez's administration created a hostile, chaotic, harassing and stressful work environment for me, paving the way for Malverty to take over my position, which continued to escalate to the point where I was unable to withstand the pressure and hostility from the administrators and their purposeful intent to cause me alienation from and friction with my fellow teachers, as they had instructed teachers to work with Assistant Principal Velazquez and younger teacher Malverty, not with me, regarding IEPs and the IEP process.

Intimidation and Discriminatory Action Favoring the Younger Teachers

167. As if removing my IEP Teacher duties and bombarding me with threats of termination wasn't enough, Principal Hernandez resorted to intimidation.

168. .On three (3) occasions, specifically August 5, 2016, January 31, 1917, and February 3, 2017, Principal Hernandez had me forcibly removed from school by security officers, which was memorialized in emails and in Discriminatory and Violation of the Safety Plan Grievances. These instances happened within view of the charter school's staff as my office was adjacent to a classroom and Success Academy's office. It was extremely embarrassing and humiliating.

169. Principal Hernandez claimed that the Extended Day Permit did not allow for PS.123M teachers to be on the third floor after a specific time, although a security guard was present in the school and both the charter school staff and P.S. 123M staff were on that floor and other floors in the school at the time I was. No such permit had existed. She was caught in this false statement when the representatives from the New York City Department of Education and the United Federation of Teachers investigated a Special Complaint that I had filed.

170. During one such occasion in attempting to intimidate and remove me from school, Principal Hernandez, personally, came up to my office which was located in the Success Academy Charter School's wing, and was uncontrollably screaming at me to get out of the school. I had called Mr. Dwayne Clark, the United Federation of Teachers' Manhattan Borough Representative, due to my fear of what was going to happen when the security guard told me I had to leave and that I was not allowed to use the bathroom next to my office. Without knowing that I was on the phone when she arrived at my office, Principal Hernandez's screaming was heard by Mr. Clark. I was so frightened by this incident that I stayed on the phone with Mr. Clark until, being walked down three flights of stairs by security, I had exited the building.

171. On one of these occasions, Assistant Principal Furnell, stood outside my office door and remained watch over me until I left the school. He actually escorted me to the front door and remained outside on the sidewalk to insure that I would not enter the school again. I memorialized all of these incidences in emails to Principal Hernandez.

172. Principal Hernandez and her administration purposely and continuously acted to humiliate and embarrass me, as evidenced in emails, letters to file, and purposeful public verbal and written announcements to school staff by assigning my IEP Teacher duties to the younger teacher Malverty and younger Family Worker Melo, although still using me by announcing on the loud speaker throughout the school on November 29, 2016, for teachers to go to *"Ms. Rosen's room to pick her brains"*, as memorialized by two staff persons in written testimony.

173. In addition to the onslaught of continuing charges of alleged professional misconduct, insubordination, and other falsified statements, Principal Hernandez and her administration sent disciplinary emails to me, forwarding these emails to my fellow teachers and staff members, to include younger teacher Malverty and younger Family Worker Melo, in order to escalate an adversarial and stressful work environment for me, sabotaging the nature of my IEP Teacher position whose role is to work collaboratively with the classroom teachers and staff.

174. In an email to both of us, dated May 9, 2016, Principal Hernandez praised a first-year teacher while ignoring me, although I was the organizing factor in the IEP issue. This is only but one of many derogatory emails sent to staff to demean me.

175. However, Principal Hernandez's plan to force me out so that she could put younger Malverty in as the IEP Teacher, did not only take the form of harassing emails, letters to file, and over burdensome work, and removal of my assigned IEP Teacher duties.

176. On 2/1/17, at a Grievance Meeting at Step 1 in the principal's office, Principal Hernandez, in witness of attendees, falsely accused me of "abusing teachers" and "causing a teacher's asthma attack". I memorialized such accusations in an email to Principal Hernandez with no reply or denial from her.

177. As a result of the intense stress, physical exhaustion and nervousness from constant discriminatory and harassing actions and the threat of termination in numerous disciplinary letters to file and in emails, the removal of my assigned IEP Teacher duties, as outlined in the 2016/2017 School Year Staff Handbook, and in assigning my duties to younger staff persons while instantly assigning me to an extreme and impossible teaching schedule of sixteen (16) students from nine (9) grades on four (4) different floors only to have to go back up to the top floor at each period change where my office was located mid-year in January and removing the majority of my IEP Teacher periods (while, in directives in emails, still demanding that I oversee special education compliance and monitor teacher-generated IEPs), I was emotionally and physically drained, and could no longer tolerate the stresses that were thrust unnecessarily and unfairly upon me.

178. Principal Hernandez and her administration created a harassing, hostile, systemized, and calculated plan to cause me undue emotional and physical distress months prior to and after my surgeries, in order to push me out by creating a scenario of blame and making me the scapegoat for special education problems.

179. On April 17, 2017, I had abdominal surgery.

180. When I returned from recuperation to P.S. 123M on May 1, 2017, all of the file cabinets that I had ordered and all the Special Education Confidential Student Files that I had created over months, since the previous year (where there had been none in the school), were removed from my office and placed in Assistant Principal Velazquez's office. The removal of such files signaled the final blow to the end to my IEP Teacher position, as direct access to the files is mandatory in case management.

181. The teachers were directed, in a school newsletter, dated May 8, 2017, to get all of the special education information from Assistant Principal Velazquez's office and to refer to her and specifically to younger teacher Malverty to review IEPs, stating I would be out of school for several weeks, although I had already returned on May 1, 2017.

182. Such was this email, as a smokescreen using an incorrect statement of an alleged absence to support their intent to push me out of the school and to make sure that all staff knew that I no longer had any role in the IEP process:

*IEP Documents*: Teachers you can now find documents related to the IEP meeting and writing process in room 315. Please come to collect any necessary documents you may need in order to complete a student's IEP. Also, be sure to review Memo #22 for important information regarding the completion of an IEP. If you did not receive this document, please come to 315 where there are additional copies.  Since Ms. Rosen is out for a

few weeks, when you complete an IEP send a message to review the IEP to Ms. Velazquez with a cc to Ms. Malverty, as we want to meet compliance

-- Principal & AP Newsletter Week of 05/01/2017 May 1st , 2017

183. I had been stripped of all my duties in a purposeful public forum with the intent to demoralize me, to pit me against and alienate me from my fellow educators, and to marginalize my original purpose at the school, albeit I still remained the most senior, experienced and knowledgeable staff person in special education in the school, to include the administration.

184. Nevertheless, the harassment and burdensome assignments did not cease even then.

185. Assistant Principal Velazquez replaced Assistant Principal Furnell's job in directing me, in an email, to complete over burdensome IEP demands, despite being stripped of all IEP Teacher duties.

186. In a directive in her email, she required me to oversee and review all of the Individualized Education Programs (IEPs) that had been written by the teachers and to review these IEPs by using a multi-page, multi-sectioned complicated computerized answer sheet questioning the content of each section of the IEP. This is not a requirement as per the federal or state laws and regulations in IEP development.

187. This IEP review document that Assistant Principal was directing me to use for each IEP when I reviewed the IEPs was the exact computed-generated document that I was improperly directed by Principal Hernandez to send in  from a fictitious SIT team the year before.

188. Basically, the recognizing of my expertise had not changed, but I no longer had the job that I applied for: I was being taken advantage of while, at the same time, marginalized.

189. This required clerical work of using a very long and complicated computer document placed further burdens and stresses on me.

190. Upon my return from surgery, the harassment and hostile work environment did not lessen but had escalated. My stress levels increased since the administration had now stripped me of everything related to my original job as the IEP Teacher. The burdens to do tedious work with all the IEPs continued in unorthodox demand of using this document, unless, unbeknownst to me, the school was directed to fill out this form as a "team" as it was directed to do the year before. . As an experienced IEP specialist, I didn't need this document to review IEPs. I was just given burdensome busy work to do.

191. With an over burdensome directive from Assistant Principal Velazquez, in an email to me upon my return from surgery, directing me to be responsible for overseeing all of the teachers in their writing of IEPs, in addition to having to keep up a grueling teaching schedule of students who were unprepared and refusing to leave their classrooms when I arrived to pick them up, as well as my fear of more disciplinary meetings and letters, my stress and nervousness were at unbearable levels.

192. By burdening me with absurd and improper work and responsibilities not within the realm of a teacher's duties, bombarding me with summoning me to disciplinary meetings and follow-up letters to my Teacher File with false accusations of every form to include dereliction of duty, insubordination and misconduct, by stripping me of my duties and periods as the IEP Teacher despite being the older and more experienced IEP Teacher who mentored younger teacher Malverty, and by creating a chaotic, physically and mentally impossible teaching schedule, Principal Hernandez's administration calculated to 'break me down', forcing me into an earlier retirement from Renewal School P.S. 123M, in order to move the favored,  younger teacher Malverty into my position.

193. Younger teacher Malverty, by June 2017, was instantly put into the Organization Sheet as the IEP Teacher and holds the position to date.

194. Due to the increasingly and serious hostile environment created by continuous disciplinary accusations and threats of termination, the stresses that ensued by a sabotaged schedule of teaching assignments of problematic students who, on occasion, were also purposely pitted against me by Administration which is memorialized in emails, and that I was also still made to oversee IEPs without  adequate work periods, upon returning to school on May 1, 2017 after recuperating from surgery, I could no longer take the pressure of the hostile work environment to include the additional demands from Assistant Principal Velazquez in an email upon my return.

195. The effort, by Assistant Principal Velazquez, to humiliate me and marginalize anything that I had done in the eyes of the staff to keep the school in compliance was magnified by her "notes" to staff in the May 1, 2017 *Staff Notes,* previously referred to in paragraph 166.

Arbitration Award: Two Years Later

196. As previously referred to in paragraph 89, I filed a salary Grievance. Principal Hernandez denied my grievance at the school level.

197. Two years later, the arbitration decision, dated April 21, 2018, cited Principal Hernandez's actions as "arbitrary and capricious":

> "*denial of all three days for the Wednesday, Thursday, and Friday position because she was*
>
> *not a classroom teacher....was arbitrary and capricious*"

> "*Indeed, if they were required qualifications, Rosen would not have been qualified to work*
>
> *In the ELT program at all.*"

198. Principal Hernandez's argument against assigning me was that I not only wasn't a classroom teacher but that I was not the teacher of an assigned class to which I would do per session work.

199. Her argument made no sense. The previous year, I worked all four days as I had applied, not as the assigned teacher to a particular class.

200. Principal Hernandez's refusal to let me do per session work, while assigning per session to her new and younger teachers, many of whom were not the assigned classroom teachers to the per session assignment, was just a smokescreen for the intentional acts of harassment and discrimination.

201. The April 21, 2018 arbitration decision, in part:

> "The Department shall make the grievant, Jane Rosen, whole for the denial of the full Wednesday, Thursday, and Friday ELT per session position for the 2016-2017 school year, including payment....."

202. As a result of the increasing hostility and hostile work environment, the efforts to alienate the staff against me, the harassment and ongoing mental and physical stress created by Principal Hernandez and her administration's effort to force me out, I was constructively terminated on May 8, 2017.

203. Having been constructively terminated as of May 8, 2017, I lost a portion of my 2016/2017 summer pay.

204. Additionally, having been constructively terminated due to the unbearable stress and increased nervousness that had escalated due to the harassing and discriminatory actions by Principal Hernandez and her administration daily in a systematic and calculated plan to oust me from my

school by continually threatening termination and creating opportunity to degrade me in the eyes of my peers (in numerous emails sent to fellow teachers), in favor of the younger teacher Malverty, I lost the opportunity to reach maximum salary.

205. I was denied the opportunity to reach maximum salary, as I was in the process of attaining the extra credits necessary for my final salary step.

206. If I had achieved the maximum salary step, I would have planned, as is required, to have worked at least one full year on that salary which would have had a major impact on my future pension calculation. This, in turn, would have given me more options as how to have my pension distributed since, at 71 years old, I am the birth mother of a twenty year old college student who I still support.

207. Furthermore, having been constructively terminated, I was also denied the opportunity to work under the increased salary in 2018, as based on the New York City Department of Education and United Federal of Teachers' new Agreement's salary table, and this would have greatly factored into my pension calculation when I would plan to retire.

208. Although I repeatedly requested in emails, commencing in June 2017 and prior to the end of school, that Principal Hernandez schedule an appointment for me to come to school and view my teacher file and secure a copy of the complete file, Principal Hernandez, in her purposeful and continued harassment, was unprepared and turned me away when I arrived to school for the appointments that she scheduled, forcing me to have to make several appointments in order to secure what is my right as a teacher to get a copy of my file.

**209.** Prior to viewing my Teacher File, Principal Hernandez mailed three copies of my 2016/2017 Rating Sheet to my home, one mailing being certified. The unsatisfactory rating for the school year contained **23 "unsatisfactory"** categories with **2 "satisfactory"** categories for *appearance and attendance.*

210. However, on July 10, 2017, at the final appointment at Renewal School P.S. 123M, in order to get my Teacher File, I was presented with a fourth, reworked copy of my Rating Sheet for School Year 2016/2017.

211. In this newer, rewritten Rating Sheet version, with the same June 27, 2017 hand-written date after the first three were sent to me by mail, also dated June 27, 2017, Principal Hernandez changed the satisfactory rating for *appearance and attendance* **to "unsatisfactory"**.

212. I never received a letter to file regarding any reference to my appearance from Principal Hernandez during school years 2015/2016 or 2016/2017, nor from any administrator that I have worked under in the thirty-nine (39) years as an educator with the New York City Department of

Education. My attendance has been exemplary except for the extra few days needed for my health, surgery and recuperation.

213. Given that I was no longer in her school, Principal Hernandez's purposeful action in changing two satisfactory categories, on the July 10, 2017 4th edition of the 2016/2017 Rating Sheet, to unsatisfactory, was arbitrary and capricious.

214. Although Principal Hernandez succeeded in using me to mentor her favored younger teacher Michelle Malverty, having moved her immediately into my position as IEP Teacher when I left, Principal Hernandez's arbitrary and capricious act in changing the only two categories that she noted were satisfactory on my Rating Sheet is indicative of how far she would go to use her power to destroy every element associated with my person and what has been an excellent and long-standing career as a devoted educator of the children of New York City with thirty-nine years of experience and expertise.

215. Principal Hernandez could not cease her planned and punitive efforts to destroy and harass this senior teacher even after she had forced me out of her school.

EEOC Form 161 (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Jane B. Modell Rosen<br>240 Central Park South, Apt.#<br>6H<br>New York, NY 10019 | From: | New York District Office<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004 |
| --- | --- | --- | --- |

|  | ☐ | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) | |
| --- | --- | --- | --- |

| EEOC Charge No. | EEOC Representative | Telephone No. |
| --- | --- | --- |
| **16G-2018-00598** | **Holly M. Shabazz,**<br>**State & Local Program Manager** | **(212) 336-3643** |

## THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☐ The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☒ Other (briefly state)    **Charging Party wishes to pursue matter in Federal District court.**

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):**  EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

_signature_

**Kevin J. Berry,**
**District Director**

April 25, 2018
(Date Mailed)

Enclosures(s)

cc:    **Attn: Director of Human Resources**
**CITY OF NEW YORK**
**DEPARTMENT OF EDUCATION**
**Office of Legal Services**
**52 Chambers Street, Room 308**
**New York, NY 10007**

## VII.  PLAINTIFF'S CERTIFICATION

By signing below, I certify to the best of my knowledge, information, and belief that:
(1) the complaint is not being presented for an improper purpose (such as to harass,
cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are
supported by existing law or by a nonfrivolous argument to change existing law; (3) the
factual contentions have evidentiary support or, if specifically so identified, will likely
have evidentiary support after a reasonable opportunity for further investigation or
discovery; and (4) the complaint otherwise complies with the requirements of Federal
Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I
understand that my failure to keep a current address on file with the Clerk's Office may
result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to
proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| | |
|---|---|
| 7/24/2018 | Jane B. Modell Rosen |
| Dated | Plaintiff's Signature |

| | | |
|---|---|---|
| JANE | B. | MODELL  ROSEN |
| First Name | Middle Initial | Last Name |

240 Central Park South Apt. 6H
Street Address

| | | |
|---|---|---|
| N.Y. | N.Y. | 10019 |
| County, City | State | Zip Code |

| | |
|---|---|
| 917 969 9965 | jbmodellrosen@gmail.com |
| Telephone Number | Email Address (if available) |

I have read the attached Pro Se (Nonprisoner) Consent to Receive Documents Electronically:

☑ Yes     ☐ No

> If you do consent to receive documents electronically, submit the completed form with your
> complaint. If you do not consent, please do not attach the form.

# New York State Division of Human Rights
# Complaint Form

## CONTACT INFORMATION

**My contact information:**

Name: Jane B. Modell Rosen

Address: 240 Central Park South          Apt or Floor #: 6H

City: New York          State: NY          Zip: 10019

## REGULATED AREAS

**I believe I was discriminated against in the area of:**

☒ Employment                    ☐ Education                    ☐ Volunteer firefighting

☐ Apprentice Training           ☐ Boycotting/Blacklisting      ☐ Credit

☐ Public Accommodations         ☐ Housing                      ☐ Labor Union, Employment
*(Restaurants, stores, hotels, movie*                                      Agencies
*theaters amusement parks, etc.)*  ☐ Commercial Space
                                                               ☐ Internship

**I am filing a complaint against:**

Company or Other Name: NYC Dep't of Education

Address: PS 123 301 West 140th Street

City: New York          State: NY          Zip: 10030

Telephone Number: 212   342   6200
                        (area code)

Individual people who discriminated against me:

Name: *Melitina Hernandez*          Name: *Jennifer Johnson*

Title: Principal          Title: Asst. Principal

*Sean Dunning*          *Joshua Furnell,*          *Brittany Velazquez*
*Assistant Principal*     *Assistant Principal*     *Assistant Principal*

## DATE OF DISCRIMINATION

**The most recent act of discrimination happened on:**   7 / 10 / 2017
                                                        month  day  year

3

## BASIS OF DISCRIMINATION
*Please tell us why you were discriminated against by checking one or more of the boxes below.*


You do not need to provide information for every type of discrimination on this list. Before you check a box, make sure you are checking it only if you believe it was a reason for the discrimination. Please look at the list on Page 1 for an explanation of each type of discrimination.

**Please note**: Some types of discrimination on this list do not apply to all of the regulated areas listed on Page 3. (For example, Conviction Record applies only to Employment and Credit complaints, and Domestic Violence Victim Status is a basis only in Employment complaints). These exceptions are listed next to the types of discrimination below.

### I believe I was discriminated against because of my:

| | |
|---|---|
| ☒ **Age** *(Does not apply to Public Accommodations)*<br>Date of Birth: **3/28/1947** | ☐ **Genetic Predisposition** *(Employment only)*<br>Please specify: |
| ☐ **Arrest Record** *(Only for Employment, Licensing, and Credit)*<br>Please specify: | ☐ **Marital Status**<br>Please specify: |
| ☐ **Conviction Record** *(Employment and Credit only)*<br>Please specify: | ☐ **Military Status:**<br>Please specify: |
| ☐ **Creed / Religion**<br>Please specify: | ☐ **National Origin**<br>Please specify: |
| ☒ **Disability**<br>Please specify:<br>**Various surgeries** | ☐ **Race/Color or Ethnicity**<br>Please specify: |
| ☐ **Pregnancy-Related Condition:**<br>Please specify: | ☐ **Sex**<br>Please specify: ☐ **Female** ☐ **Male**<br>    ☐ **Pregnancy**<br>    ☐ **Sexual Harassment** |
| ☐ **Domestic Violence Victim Status:**<br>*(Employment only)*<br>Please specify: | ☐ **Sexual Orientation**<br>Please specify: |
| ☐ **Familial Status** *(Does not apply to Public Accommodations or Education)*<br>Please specify: | ☐ **Retaliation** *(if you filed a discrimination case before, or helped someone else with a discrimination case, or reported discrimination due to race, sex, or any other category listed above)*<br>Please specify: |


Before you turn to the next page, please check this list to make sure that you provided information **only** for the type of discrimination that relates to your complaint.

# EMPLOYMENT OR INTERNSHIP DISCRIMINATION

*Please answer the questions on this page only if you were discriminated against in the area of employment or internship. If not, turn to the next page.*

**How many employees does this company have?**

☐ 1-3    ☐ 4-14    ☐ 15 or more    ☒ 20 or more    ☐ Don't know

**Are you currently working for the company?**

☐ **Yes**

Date of hire:    (_____  _____  _____)    What is your job title? _____
                    Month        day       year

☒ **No**

Last day of work:    ( **05**  **08**  **2017** )    What was your job title?  **IEPteacher**
                      Month    day    year                                   _____

☐ **I was not hired by the company**

Date of application: (_____  _____  _____)
                       Month        day       year

## ACTS OF DISCRIMINATION

**What did the person/company you are complaining against do? Please check all that apply.**

☐ Refused to hire me

☐ Fired me / laid me off

☐ Did not call me back after a lay-off

☒ Demoted me

☐ Suspended me

☐ Sexually harassed me

☒ Harassed or intimidated me (other than sexual harassment)

☒ Denied me training

☐ Denied me a promotion or pay raise

☐ Denied me leave time or other benefits

☐ Paid me a lower salary than other workers in my same title

☐ Gave me different or worse job duties than other workers in my same title

☐ Denied me an accommodation for my disability

☐ Denied me an accommodation for my religious practices

☒ Gave me a disciplinary notice or negative performance evaluation

☐ Other: removed duties, constructive discharge _____

***DESCRIPTION OF DISCRIMINATION -*** for <u>all complaints</u> *(Public Accommodation, Employment, Education, Housing, and all other regulated areas listed on Page 3)*

***Please tell us more about each act of discrimination that you experienced. Please include dates, names of people involved, and explain why you think it was discriminatory.***
***PLEASE TYPE OR PRINT CLEARLY.***

See atttached addendum

---

*If you need more space to write, please continue writing on a separate sheet of paper and attach it to the complaint form.* ***PLEASE DO NOT WRITE ON THE BACK OF THIS FORM.***

8

**ADDENDUM TO NYSDHR COMPLAINT FORM**

**JANE B. MODELL ROSEN**

1.  I have been a teacher with the NYC Department of Education (formerly the NYC Board of Education) for approximately 39 years.

2.  I am presently 70 years old.

3.  I have held a New York State Special Education license since 1981.

4.  Prior to joining the staff at NYC DOE Renewal School P.S. 123M (*Renewal* referring to the designated status for poorly performing NYC schools), I was the out-of-classroom IEP (Individualized Education Program) Teacher at P.S. 50M for several years, having worked for the Department of Education as a special education teacher, unit coordinator, and member of a Committee of Special Education team since 1981.

5.  I was hired by Principal Melitina Hernandez in August 2015 as the IEP Teacher for Renewal School P.S. 123M, after I reached out to Principal Hernandez in an email in early August 2015 seeking specifically an IEP Teacher position, which is an out-of-classroom position with duties related to special education compliance, to include parental notice and meeting procedure, protocol, education program and services development for students with disabilities, and input and monitoring of SESIS, the NYC DOE special education computerized system, as well as serving any SETSS (Special Education Teacher Support Services Program) students in the school.

6.  I was rated "Satisfactory" at Renewal School P.S. 123M for that first school year (2015/2016).

7.  As it was relayed to me by Principal Hernandez that my out-of-classroom position did not require observations, I was never observed by Principal Hernandez and/or Assistant Principals Johnson and Dunning, resulting in no written observations for school year 2015/2016.

8.  Additionally, during school year 2015/2016, I received no letters to my Teacher File, no letters of a disciplinary nature requiring my signature, and I was never accused of

1

professional misconduct, insubordination, or unsatisfactory teaching by any administrator during that first year at Renewal School P.S.123.

9. During the school year 2015/2016, despite having two major surgeries, I maintained my professional responsibilities and received a "satisfactory" rating for the school year.

10. My IEP Teacher position continued into the school year 2016/2017, as per the spring 2016 out-of-classroom IEP Teacher position posting, authored and created by Principal Hernandez for Renewal School P.S.123M.

11. Immediately, upon commencement of school year 2016/2017, an onslaught of written summonses to disciplinary meetings with follow-up disciplinary letters to file commenced the first week of the school year, on or about 9/8/16.

12. Continuing shortly thereafter, I received multiple unsatisfactory observation ratings for my one-to-one support service for individual special education students.

13. However, I continued to perform my IEP Teacher duties according to the 2016/2017 Renewal School P.S. 123M Staff Handbook's Special Education Procedure Chart, containing a chronology of my specific responsibilities as the IEP Teacher, including classroom teacher and other staff responsibilities, for the IEP process for school year 2016/2017, as well as performing other, non-IEP Teacher duties such as administrative duties as directed by Principal Hernandez as the school year progressed.

14. Although having been assigned as the Special Education Liaison for Renewal School P.S.123M for school year 2015/2016, on or about October, 2016, Principal Hernandez removed my Special Education Liaison position and responsibility to attend monthly out-of-school meetings held by the Manhattan Borough Special Education Office as I had done the previous school year 2015/2016 as the IEP Teacher, and appointed younger Lead/Model Teacher Michelle Malverty (an assignment not within the NYC DOE description of her duties as Lead/Model Teacher) to act as Special Education Liaison and to attend the out-of-school monthly meetings held during the entire 2016/2017 school year.

15. Beginning in January 2017, and continuing through the subsequent months, Principal Hernandez commenced a systematic removal of my IEP Teacher duties for which I was hired.

16. My IEP Teacher duties were assigned to younger Lead/Model Teacher (school year 2016/2017) Michelle Malverty and to a younger Family Worker Luz Melo, both who are in their twenties, and whose specific NYC DOE positions are specified in NYC DOE published documents outlining their job description and duties, neither of which include the duties of the IEP Teacher.

17. Principal Hernandez took advantage of the fact that this younger Lead/Model Teacher Malverty, as a less experienced teacher in a special education classroom during the 2015/2016 school year, had been trained by me in special education procedures and in NYS and Federal special education regulations and laws all throughout the previous school year 2015/2016 and continuing into the 2016/2017 school year, as memorialized in numerous email correspondences.

18. This younger Lead/Model Teacher Malverty, with far less seniority and experience than myself, instead of meeting her duties as Lead/Model Teacher (classroom-based) with specifically defined duties to her position as Lead/Model Teacher (as outlined in a NYC DOE document and as per the UFT/DOE Agreement, and paid, as Lead/Model Teacher, with a substantial additional NYC DOE allocation in addition to her regular salary), was directed to take over my duties by Principal Hernandez in emails and in Staff Notes to staff, although no such duties appear in the NYC DOE Lead/Model Teacher pdf document.

19. At the same time, Principal Hernandez and Assistant Principal Johnson, on or about January 2017, mid-year in the school year, effected an extreme and demanding change to my schedule of a drastic reduction of my IEP Teacher work periods while greatly increasing teaching periods, with changes of groups of students at each period change, representing non-special education students from nine (9) grades (K-8) on four floors that I had never been assigned to at Renewal School P.S.123M,

20. Prior and during the systematic removal of my IEP duties and drastic change to the nature of my job, while not providing me any preparation for such increased teaching schedule, I received multiple letters to file from Principal Hernandez, Assistant Principal Furnell (who was removed from the school by Ms. Hernandez on or about January 2017), and from Assistant Principal Johnson, containing egregious, erroneous, and false information and statements regarding special education students' records and my duties as IEP Teacher, to include alleged negligence in the delivering of academic support to the few SETSS (special education) students.

21. During the weeks following the drastic changes in January 2017 to my IEP Teacher position, my remaining IEP Teacher duties and responsibilities continued to be systematically removed and assigned to younger Lead/Model Teacher Malverty and younger Family Worker Melo as my teaching duties increased.

22. Although my IEP duties and periods for such work were removed while my teaching duties and periods heavily increased, newly-assigned Assistant Principal Velazquez continued to burden me with IEP Teacher duties of having the responsibility to oversee all of the Individualized Education Programs (IEPs) and to review and correct these IEPs written by teachers, placing even more stress on me as I was being asked to still perform IEP Teacher duties that have been, on paper, removed, while carrying a heavy schedule of teaching.

23. This removal, on paper, of my IEP Teacher duties (while assigning them to younger Lead/Model Teacher Malverty) and the removal of IEP-assigned work periods by Principal Hernandez (to include emails from Assistants Principal Furnell and Johnson), while burdening me with the immediate and extreme increased schedule of teaching duties for struggling non-special education students spanning nine (9) grades for which no information, both behavioral and academic information was ever provided to me (as evidenced in my email request for such), the stress and hostile work environment escalated with an over burdensome directive from Assistant Principal Velazquez in an email to me directing me to be responsible for overseeing all of the teachers' writing of IEPs after a scheduled return to school on May 1, 2017,  from my 10-day absence after recuperating from major surgery.

24. Due to the ongoing harassing disciplinary letters threatening termination by Principal Hernandez and Assistant Principals Furnell and Johnson, to include the overly burdensome recordkeeping and assigned administrative duties beyond normal teacher duties, the unsatisfactory observations, the systematic removal of my IEP Teacher duties and removal of the major portion of IEP periods to perform these duties, and the greatly "overnight" assignment of increased teaching periods while continuing to assign me to oversee compliance of special education mandates, the administration created a hostile, chaotic, and harassing stressful work environment which continued to escalate day by day.

25. On the end-of-school Rating Sheet for school year 2015/2016, although a satisfactory rating was assigned to me while having no letters to file of any disciplinary nature, Principal Hernandez wrote untrue and derogatory remarks causing me great stress.

26. I filed a grievance and Principal Hernandez was directed, in a grievance hearing decision during school year 2016/2017, to remove the written statements from the evaluation form.

27. Having trained younger teacher Malverty, who was assigned as a classroom teacher during the 2015/2016 school year, to correctly perform special education requirements, to include correct IEP writing for these legal documents, Principal Hernandez and her administration stepped-up the hostile, retaliatory, and harassing behavior, as the year progressed, to cause me great stress, to include pitting me against other teachers and to spur on conflicts between me and staff, related service providers, and other staff in the school in order to replace me with the younger teacher, as evidenced in emails and staff publications.

28. As a result of the discriminatory and harassing actions of the threat of termination in ongoing and numerous disciplinary letters to file, removal of my assigned IEP Teacher duties, as outlined in the 2016/2017 School Year Staff Handbook, in assigning my duties to younger staff persons while instantly assigning me to an extreme teaching schedule mid-year in January, and removing most of my IEP Teacher periods, although in directives in emails that I continue to oversee special education compliance and monitor teacher-generated products pertaining to special education students' programs and services, I was constructively terminated and pressured to retire as of May 8, 2017, causing me to lose a portion of my summer pay.

29. Additionally, due to the unbearable stress created by Principal Hernandez and her administration in a systematic and calculated plan to oust me from my school by threatening termination, in favor of the younger Lead/Model Teacher Malverty and Family Worker Melo, I lost the opportunity to reach maximum salary as I was in the process of attaining the extra credits necessary to reach maximum salary.

30. Principal Hernandez and her administration created a harassing, chaotic, hostile, systemized, and calculated plan to cause me undue emotional and physical distress in my work environment in order to push me out by bombarding me with letters to file accusing me of every form of teacher dereliction and misconduct, by stripping me of my duties and work periods as the IEP Teacher despite being the older and more experienced IEP Teacher who mentored younger classroom teacher Malverty (was not assigned as Lead/Model Teacher during the 2015/2016) school year, and by creating a chaotic, physically and mentally taxing teaching schedule, forcing me into an earlier retirement

from Renewal School P.S. 123M, in order to move the favored, younger Malverty into my position during the 2016/2017 school year.

31. Principal Hernandez and her administration purposely and continuously acted to humiliate and embarrass me, as evidenced in emails, and purposeful public verbal and written announcements to staff by assigning my IEP Teacher duties to the younger Lead/Model Teacher Malverty and younger Family Worker Melo.

32. As a result of Principal Hernandez and her administration's purposeful intent to remove me as a more senior, older teacher from the school by her intentioned and systemized process of removing my duties in favor of the younger teacher and family worker, and in "breaking me down" by creating chaos and conflict in my daily work environment, I could no longer withstand the tension and stress placed on me by the burdens imposed in continuous and extreme change of duties and schedules, in addition to the threats of termination in the numerous letters to file.

33. In addition to the onslaught of continuing charges of alleged professional misconduct, insubordination, and other falsified statements, Principal Hernandez and her administration sent disciplinary emails to me with the purposeful intent of embarrassing me by forwarding these emails to my fellow teachers and staff members, to include younger Lead/Model Teacher Malverty and younger Family Worker Melo, in order to escalate an adversarial and stressful work environment for me, sabotaging the nature of my IEP Teacher position whose role is to work collaboratively with the classroom teachers and staff.

34. Furthermore, although my IEP Teacher duties had been systematically removed from me and assigned to younger Lead/Model Teacher Malverty and younger Family Worker Melo during school year 2016/2017, Principal Hernandez continued to place me in demanding and stressful situations with responsibilities of an administrative nature, not within my designated role as IEP Teacher, as I was repeatedly called to the office (including being called to the office during my duty-free preparation periods and my lunch periods), to act upon and answer to serious school matters, including being assigned the responsibility of engaging with visitors to the school and out-of-school personnel on the phone and in written communication, as well as making decisions regarding special education services concerning agencies such as ACS and the NYC DOE Assignment Centers, other schools and their administrators in and out of New York City and New York State, lawyers representing students, problematic charter school arrivals, assignments to classes for new arrivals, and dealing with irate parents regarding their children's special education services, school matters which are clearly of an

administrative nature and which continually added to the excessive stress of the overly burdensome and constantly changing work load already placed upon me, all of which has been memorialized in emails and for which Principal Hernandez used against me in a disciplinary letter to file during the 2016/2017 school year.

35. Due to the hostile environment created by continuous disciplinary accusations and the stress that ensued by a sabotaged work environment, schedule of teaching assignments for problematic students for which I was provided no information and preparation, at the same time assigning my job duties to younger Lead/Model Teacher Malverty and younger Family Worker Melo while still requiring me to perform requested duties as the IEP Teacher without adequate work periods, I could no longer bear the increasing harassment and ongoing daily stress created by Principal Hernandez and her administration's effort to force me out and, as a result, was forced to retire on May 8, 2017, only a few days after returning to school having recuperated from surgery.

36. Although I repeatedly requested, in emails in June 2017 commencing prior to the end of school, that Principal Hernandez schedule an appointment for me to come to school and view my teacher file and secure a copy of the complete file, Principal Hernandez, in her purposeful and continued harassment, was unprepared and/or turned me away when I arrived to school for the appointments that she scheduled in June and July 2017, forcing me to have to make several return appointments to Renewal School P.S.123M in order to secure what is my right as a teacher.

37. Prior to viewing my Teacher File, Principal Hernandez mailed three copies of my current 2016/2017 Rating Sheet to my home, one having been sent certified mail. The unsatisfactory rating for the school year contained 23 unsatisfactory categories with 2 "satisfactory" categories for appearance and attendance.

38. However, on July 10, 2017, at the final appointment at Renewal School P.S. 123M at which time I viewed and received a copy of my Teacher File, I was directed to sign a fourth Rating Sheet for School Year 2016/2017.

39. In this most recent 2016/2017 Rating Sheet, after the first three were sent to me by mail, Principal Hernandez changed the "satisfactory" rating for appearance and attendance to "unsatisfactory".

40. I never received a letter to file regarding any reference to my appearance from Principal Hernandez during school years 2015/2016 or 2016/2017, nor from any administrator that I have worked under in the thirty-nine (39) years as an educator with the NYC DOE.

41. As evidenced in this latest effort by Principal Hernandez to persist in her harassment and vindictiveness, weeks after forcing me into an early retirement, by changing my original "satisfactory" rating for "appearance" and "attendance" to "unsatisfactory", Ms. Hernandez exhibits a clear intention to continue her abuse for as long as she can.

## ADDITIONAL INFORMATION

*The next three pages are for the Division's records and **will not be sent out** with the rest of your complaint.*

### Contact information

My primary telephone number:

917    969    9965
(area code)

___home phone
___work phone
___cell phone
___other _____

My secondary telephone number:

_____  _____  _____
(area code)

___home phone
___work phone
___cell phone
___other: _____

My email address: jbmodellrosen@gmail.com

Last four digits of my Social Security number: 4316

Contact person *(someone who does not live with you but will know how to contact you if the Division cannot reach you)*:

Name: Dr. Priscilla Konecky

Telephone number: 212    247    0207
(area code)

Relationship to me: *Family Friend*

### Special Needs

I am in need of: a) A translator *(if so, which language?)*: _____

b) Accommodations for a disability: _____

c) Other: _____

### Settlement / Conciliation:

To settle this complaint, I would accept: *(Please explain what you want to happen as a result of this complaint. Do you want a letter of apology, your job back, lost wages, an end to the harassment, etc?)*
full summer pay; maximum salary step for pension calculation; monetary compensation for emotional distress

11

## NOTARIZATION OF THE COMPLAINT

Based on the information contained in this form, I charge the above-named Respondent with an unlawful discriminatory practice, in violation of the New York State Human Rights Law.

By filing this complaint, I understand that I am also filing my employment complaint with the United States Equal Employment Opportunity Commission under the Americans With Disabilities Act (covers disability related to employment), Title VII of the Civil Rights Act of 1964, as amended (covers race, color, religion, national origin, sex relating to employment), and/or the Age Discrimination in Employment Act, as amended (covers ages 40 years of age or older in employment), or filing my housing/credit complaint with HUD under Title VIII of the Federal Fair Housing Act, as amended (covers acts of discrimination in housing),as applicable. This complaint will protect your rights under Federal Law.

I hereby authorize the New York State Division of Human Rights to accept this complaint on behalf of the U.S. Equal Employment Opportunity Commission, subject to the statutory limitations contained in the aforementioned law and/or to accept this complaint on behalf of the U.S. Department of Housing and Urban Development for review and additional filing by them, subject to the statutory limitations contained the in aforementioned law.

I have not filed any other civil action, nor do I have an action pending before any administrative agency, under any state or local law, based upon this same unlawful discriminatory practice.

I swear under penalty of perjury that I am the complainant herein; that I have read (or have had read to me) the foregoing complaint and know the contents of this complaint; and that the foregoing is true and correct, based on my current knowledge, information, and belief.


_Jane B. Rosen_
Sign your full legal name


Subscribed and sworn before me
This 23rd day of Aug , 20 17

_____
Signature of Notary Public

County: New York    Commission expires: 1/22/18
Notary Public, State of New York
No. 102GL60 08978


**Please note: Once this form is notarized and returned to the Division, it becomes a legal document and an official complaint with the Division of Human rights. After the Division accepts your complaint, this form will be sent to the company or person(s) whom you are accusing of discrimination.**

## NOTARIZATION OF THE COMPLAINT

Based on the information contained in this form, I charge the above-named Respondent with an unlawful discriminatory practice, in violation of the New York State Human Rights Law.

By filing this complaint, I understand that I am also filing my employment complaint with the United States Equal Employment Opportunity Commission under the Americans With Disabilities Act (covers disability related to employment), Title VII of the Civil Rights Act of 1964, as amended (covers race, color, religion, national origin, sex relating to employment), and/or the Age Discrimination in Employment Act, as amended (covers ages 40 years of age or older in employment), or filing my housing/credit complaint with HUD under Title VIII of the Federal Fair Housing Act, as amended (covers acts of discrimination in housing),as applicable. This complaint will protect your rights under Federal Law.

I hereby authorize the New York State Division of Human Rights to accept this complaint on behalf of the U.S. Equal Employment Opportunity Commission, subject to the statutory limitations contained in the aforementioned law and/or to accept this complaint on behalf of the U.S. Department of Housing and Urban Development for review and additional filing by them, subject to the statutory limitations contained the in aforementioned law.

I have not filed any other civil action, nor do I have an action pending before any administrative agency, under any state or local law, based upon this same unlawful discriminatory practice.

I swear under penalty of perjury that I am the complainant herein; that I have read (or have had read to me) the foregoing complaint and know the contents of this complaint; and that the foregoing is true and correct, based on my current knowledge, information, and belief.

_Jane B. Rosen_
Sign your full legal name

Subscribed and sworn before me
This 23rd day of Aug , 20 17

Signature of Notary Public

County: New York    Commission expires: 1/22/18
Notary Public, State of New York
No. 02GL6068978

**Please note: Once this form is notarized and returned to the Division, it becomes a legal document and an official complaint with the Division of Human rights. After the Division accepts your complaint, this form will be sent to the company or person(s) whom you are accusing of discrimination.**

**Witnesses:**

**The following people saw or heard the discrimination and can act as witnesses:**

Name: Kathy Rivera                                    Job title: psychologist

Telephone number: 212 342 6200

Relationship to me: psychologist

What did this person witness?: removal of my duties


Name: Luz Melo                                        Job title: family worker

Telephone number: 212 342 6200

Relationship to me: family worker

What did this person witness? *removal of my duties*

*If you have more witnesses, please write their names and information on a separate sheet of paper and attach it to this form. Please do not write on the back of this form.*


**Additional Details:**

**Did you report or complain about the discrimination to someone else?**
*(If you told someone, filed a report or sent a letter about the discrimination, please indicate whether you went to a supervisor, a manager, the owner of the company, your human resources office, your union, your housing provider, the police, etc.).*
n/a


**Date you reported or complained about discrimination:** _____  ____  ____
                                                                         month      day      year

**How exactly did you complain about the discrimination?**
*(Who did you talk to about it? Who did you filed a report or make a formal written complaint or union grievance with? What did you say?)*
n/a


**What happened after you complained?**
*(Was your complaint investigated? Was any action taken in response to your complaint? Did the discrimination stop? Did you experience retaliation for complaining?)*
n/a

**If you did not report the discrimination, please explain why:**
discrimination reported to principal and superintendent

_____

**Did the person you are complaining against touch you, hurt you, or physically harm you?**
☐ Yes     ■ No

*If yes, please explain:* _____

_____

**Examples of other people who were discriminated against in the same way as you were:**
*(For example, people who were harassed by the same manager, disciplined or terminated for the same reasons, did not receive an accommodation for the same reasons, etc.).*
*If you are complaining about discrimination relating to race, national origin, age, religion, etc. please describe their races, national origins, ages, religions, etc.*
other older teachers in school forced to retire

**Examples of other people who were treated better than you were:**
*(For example, people who were not fired for doing the same thing you were fired for, people who were doing the same job but making more money, people who were allowed to stay in the store while you were told to leave, etc.).*
*If you are complaining about discrimination relating to race, national origin, age, religion, etc. please describe their races, national origins, ages, religions, etc.*
Took duties away and gave them to a younger teacher and younger family worker

Malverty – caucasian, 20's, Christian
Melo – hispanic, 20's, Christian



**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

NYS Div. of Human Rights
Adam Chenkof Rosen
163 West 125th Street
4th Floor
New York NY 10027

9590 9402 2365 6249 5408 15

2. 7017 1000 0000 4890 1178

PS Form 3811, July 2015 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X Victor Grey
☐ Agent
☐ Addressee

B. Received by (Printed Name)
Victor Gomez
C. Date of Delivery
9/11/17

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Restricted Delivery
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt



**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®.

O F F I C I A L   U S E

Certified Mail Fee
$

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)    $
☐ Return Receipt (electronic)    $
☐ Certified Mail Restricted Delivery    $
☐ Adult Signature Required    $
☐ Adult Signature Restricted Delivery $

Postage
$

Total Postage and Fees
$

Sent To

Street and Apt. No., or PO Box No.

City, State, ZIP+4®

SEP 11 2017
ANSONIA STATION N.Y. NEW YORK, NY 10023

7017 1000 0000 4890 1178

PS Form 3800, April 2015 PSN 7530-02-000-9047    See Reverse for Instructions